Case number 19-1263, et al. Wyman Gordon Pennsylvania, LLC Petitioner v. National Labor Relations Board. Mr. Grimaldi for the petitioner, Ms. Sheehy for the respondent, Mr. Kilbert for the intervener. Mr. Grimaldi, good morning. Good morning. You may proceed. Thank you. May it please the court, I'm Roger Grimaldi for the petitioner. Your honors, petitioner's position is that there are four basic reasons why the respondent National Labor Relations Board decision should be reversed. And starting with the premise and this has been consistent from the very beginning that the employees should have the ability to have free choice to determine whether or not they want to be recognized, or excuse me, represented by the United Steelworkers. Number two, the board's finding was unsupported by the substantial evidence in the record taken as a whole. And three, this court's own precedent. And then number four, the board's remedy doesn't effectuate the policy of the act which really circles us right back to the first point I made, which is allowing the employees to have free choice. And it starts from our perspective with the petition to withdraw. Petitioner had objective evidence at the time of the withdrawal that the union had in fact lost majority support, consistent with Levitz. Unlike Levitz, though, there was no evidence provided by the union at the time of the petition that was contrary to the wishes of the employees and the respondent. And the union had not suggested that any such evidence existed. And the respondent argues that the petition was flawed, consistent with Levitz and we believe that that's not correct. First of all, Levitz, from our perspective, doesn't require that evidence be unambiguous, and that's the board's own decision in Diversicare Leasing Corp. And only that the employer shows a loss of majority supported by the preponderance of the evidence, as noted in Pacific Coast Supply. And here... Doesn't there have to in fact be a loss of support? That is correct. I went carefully through sort of name by name by name on there and said it just wasn't able to... It wasn't in fact reliable evidence that this document was such a kind of hodgepodge of collections and only two of the pages sort of said here's what you're signing on for when you sign it. Except those are sort of factual determinations, we owe them extraordinary deference. Well, Your Honor, unlike, for example, in the Liberty Bakery Kitchen case where there was... All the pages were blank and then were sort of filled in with some general information post fact when they handed them the petition. This petition, the record shows, was presented to the employees in a packet. And yes, the first and last page had language, very clear unambiguous language, and the middle page did not. The record shows that everyone that signed it, those that testified, and particularly those that testified that signed the page that was blank, recognized what they were signing. Again, the record shows that it was presented in a packet. That same packet... Right, that's not what the ALJ found because in fact, according to the ALJ, there were two different people collecting signatures. It looked like on even the same days, maybe it was October 19th if I've got my dates right, so that it couldn't possibly have been presented as a packet. Somebody was just presenting those middle sheets. No, actually, Your Honor, with all due respect to the ALJ, that was incorrect because what had happened... The fact finding was incorrect, is that what you're saying? Yes, in this case. You know what your standard of review is for us to disagree with a fact finding that the board did not disagree with? We do, and we understand that it's heavy, Your Honor. What had happened was the original petitioner, the original employee, unfortunately had cancer. He handed the packet to another individual to complete the signatures, but it was handed in a packet and then given to the employer by the employee's counsel. Not even a group of employees, but the employees had separate counsel. He presented the packet along with a letter demanding withdrawal, and that is the basis for the employer's reasoning that it, in fact, that the union had lost majority support. Exactly, Mr. Grimaldi, but I think that's the difficulty that the board found. The board didn't go into the chapter and verse that the ALJ did because the board, as you just acknowledged, the board said what the employer had before it when it made the decertification decision was, or the non-recognition decision, was the petition. And if it had also had before it information from the employees who circulated it saying, you know, we always showed them the front page and we always talked to them, you know, that would present a different case, but the board has held that the kind of after the fact evidence that wasn't before the employer at the time it made the decision is not something the board will consider. And I understand that from the perspective of the testimony, Your Honor. The employer had what was presented to it, as I said, the packet, which was clear and accepted it as a packet because it came from counsel, as I said, with a letter. I think the other important fact to note here, and this actually goes to the remedy, that even if this court finds that the employer didn't have evidence that in fact the union had lost the majority support, the petition itself and the fact that it was provided by counsel along with a letter provided enough evidence that the petitioner had at least a good faith reasonable uncertainty that the union had lost majority support. And so this goes to the remedy that why didn't the employer then ask for an election, you want to you want to do it backwards through the remedy but the proper step for the employer at that point would have been for Robin Gordon itself to call for an election and now you want to say that something in the law requires the board to make up for that. Your Honor, the, the, the employer made the decision, again, frankly, based on the demand by the employees counsel that it withdraw recognition or face a ULP at the time. And so it made its decision based on the petition and that information in the letter, which is why it didn't ask at that point for a petition for a very big sophisticated company with very good attorneys. And so I don't think it's going to fold as soon as someone says you better do this or that you'll have an unfair labor practice records pretty clear that they know how to stand up for what they believe is their rights in the process. And so I'm just not sure why if they thought, well, this petition is a little bit of a massive it's not repeated the language about what they're signing isn't on every page and names are all over the place. Why wouldn't the company have just asked for the election. Well, again, I believe the, the, the company's position was and that really the names weren't all over the place I mean they were in order. It's just that there was a page that had a significant number of names on it that at the top of the page did not have the information in the packet that was on the first and last page. And the company at that time made a decision based on the information that it had in front of it. And the only thing I might add before I withhold the rest of my time for rebuttal is with regard to the remedy and the good faith. We don't believe that there was a hallmark violation of the act because there was a reasonable belief, the board's remedy here is more punitive than remedial and would be an extreme remedy. In this case, giving the employees an opportunity for choice is the fair remedy and I'll withhold the rest of my time now for like, I'm sure I hope Judge Henderson will give you some additional time so I had a few more questions. One is just what is the status what has been happening since the employer withdrew recognition, and the current time a lot of time has elapsed at the union continue to represent the individuals have you continue to work with them or has it been completely cut off has the has the employer perpetuated the continued not perpetuated continued in the non recognition in the interim. The employer has continued in the non recognition in the interim, depending the outcome of the case, and the employer and the employees have moved along fine in the interim. Okay. And then you had you talked, you haven't talked about here this morning but in your brief about this August 1 wage increase issue, and the fact that I'm in Gordon did it retroactive. I think was it from December to August 1. Did that include interest. I don't believe so, Your Honor, I don't know for sure but I would hazard a guess if I don't like guessing but I would say it probably did not. Okay. Would the board's remedy require interest to make them whole, or is that just something that doesn't get addressed in this kind. I don't believe it was addressed. And I would add that the parties were negotiating wages, as early as May. Okay, thanks. Thank you. All right. Thank you, Miss she. Morning, Your Honors Barb she he for the National Labor Relations Board. I don't have a lot to add beyond what's in our brief but I'll just highlight a couple of points that I want to emphasize. The first one is Judge Clark recognize that there's a lot of discussion about this different employees who testified and the two signature collectors, but the board so that while the LJ is heavy on that analysis and his decision the board doesn't rely on that for the The second point is that it's a very simple matter of simple principle rather that after acquired evidence doesn't matter what the input what matters for purposes of rupturing the bargaining relationship, what matters is what did the employer have before it at the time that it was to recognition. So what did it have it had a petition with the intent on the top of two pages and then three pages that just headlines and signatures. So what the collectors said later the signature collectors or what the employees said later about what was in their packet is irrelevant for purposes of the board's decision here they specifically say the after acquired evidence produced at hearing is not relevant to the finding of the unlawful. Withdrawal of recognition. I just wanted to point that out. Secondly, I judgment lad. I think you were getting at this and this is the one point I wanted to make about the election on the remedy issue. We are four years now after the fact. Of the unlawful withdrawal of recognition. So for four years they have continued to refuse to recognize the Union. So at this point. It's not the board traditionally is not going to say that that is actually going to be representative of employee choice at the time that there was actual relationship. We are four years after the fact, where the Union hasn't been able to realize the will of the employees when they voted the Union and in 2014 And the only other thing I wanted to. Oh, I think I can answer about the interest. I don't think the record. This is about the back pay related to the August one. Increase. I don't think the record reflect. I think opposing counsel attorney Grimaldi is correct. I don't think the record shows that they pay the interest And I believe that's something that will be worked out in compliance, whether a violation like that requires the payment of interest, but I don't think the record does reflect that. And that's certainly something that the regional office would sort out in that If Wyman Gordon on that August 1 was a 2016 my ears right 2016 had paid say the same wage increase it had done the year before, or had stayed within that average range of increases. Would that have been okay, even if it hadn't negotiated if it just were in the middle of bargaining here and I'm just going to maintain the status quo. Would that have been okay. We haven't. It's an unusual violation. I'll admit stone container and TX you electric Sorry, did you just say yes, that would have been okay. There would have been no violation. Would not have been a violation under stone container and electric what the violation is. So what we had here was a There have been a violation or something else, or would that have been okay permissible No, I think it would have been. I think it would have been okay because of the unique circumstances of what was happening stone. Carves out this exception that says if it's a unique. Sorry, it's a discreet occurring event. And you're in the context of first bargaining. There are certain privileges as the employer that you have. And one of those is you have to notice an offer to bargain, but you don't have to bargain to impasse. So I think, yes, so long as the union. I'm sorry. So long as Wyman Gordon had done something by August 1 there would not be a violation. But something would have had to be at least arguably maintaining the status quo. Or offered a bargain notice the notice that it intended to do something. And that's that. So that's the key. That's what did not happen here. But what if I understand their argument and I'm sure Mr. Grimaldi will correct me if I don't their argument is look, we did it. No one's disputed. We did it retroactive to August 1 and so For all practical intents and purposes, we paid on October. I'm sorry, October 1 on August 1 we paid on August 1 with this retroactive payment. So it's as if we had just Maintained the status quo. So at least that's how I understand it seems like some of the arguments in the briefs are going past each other on this issue. That's what I think they understand What happened and your argument is, well, you needed to bargain beforehand, but they say, look, for all intents and purposes, we paid August 1 and you just said it's fine as long as I paid August 1 we wouldn't be here. So how do I reconcile that So here's, here's the problem. They didn't they bypassed the union, even if at the end of the day involved the union, the union couldn't take it couldn't have taken the issue to impasse and the employer at the end of the day would have been entitled to impose in this one instance that Like I said, the discrete current event to impose the pay increase that it saw I thought you said that even if they hadn't notified or bargained if they just paid maintain the status quo, they wouldn't have had to also bargain in advance. So did I misunderstand. That was my first question. I must say misunderstand your answer. I think they have to notify the union of what they intend to do so they Isn't, I mean, she isn't the the Issue here that the employer neither notified. We're going to do the same, you know, we're going to do X increase At notify as of August 1 instead they went along the employees with the new union got no increase was they had been getting increases before and only after the employer denies recognition, then it says, oh, and now we're going to give you An increase retroactive to August 1 so from the perspective of employees looking at what is my union done for me. They painted a picture that is that is very harmful. Of the unions ability. So, so it doesn't it. So all I'm saying is, isn't that why it matters that whether the employer committed as of August 1 rather than just actually did something retroactive or am I, am I I don't think that's an unfair reading of the fact. I mean, that's certainly the timeline that played out right but it's so fundamentally, yes, they excluded the union from the picture. So, but even if they hadn't withdrawn recognition. It's still would be the violation. Certainly, that makes it look worse that the increase came after the union was no longer being recognized. Well, I think that's what that was one thing that was curious to me because that's almost what I would have expected to see and either the board or the ALJ decision. Was this, you know, what was the very image you and Judge Pillar were just talking about that. Now, now that we've withdrawn. See what happens when the unions, you know, I would have expected up front. It's like, Look at that a union comes in. You don't get your regular August one increase. And as soon as they're gone, you get it. But I didn't actually find that in the board decision that I miss it or in the ALJ decision. Well, it's not And that could be how the general counsel ended up litigating the case and whether they decided to make that argument. I'm not sure, but certainly there's nothing in the ALJ decision. But there's an explanation for why it's not in the board decision, the board finds that the employer in this case doesn't challenge this violation. So the board isn't going to say anything about it. If you don't tell the board. We have a problem with your finding, you're not going to see the board say anything other than we're going to enforce that decision. So that's why that's why I was talking about, I think, at least as I read their exception to They were raised, they're, they're, they're raising the same argument. It's just that they have a different conceptualization of it then Then perhaps you and the board or the general counsel did they've got this sort of retroactive so nothing happened maintain the status quo view. And, and so it seemed to me that they had raised it. Now you've, you've given an answer. To me, but it's not, you know, the answer they had to negotiate in advance. That's the answer. That's very different from the this was all meant to this was all a game to undermine the union by union come in no increase and then union goes away increase happens retroactively we just can't. That's not in the record here. That's not no one's found that No, no one has found that. But that's, that's not a necessary finding to what the alleged violation found violation is the found violation isn't some sort of Sort of that that strikes me the way that we're describing this strikes more as like a coercive or a threat or implied threat. That's not, that's not what this whether that could have been Just backing up. I mean, when I look at this on the briefing. I think a this objection to The The board's finding of a failure to grant the annually recurring wage increase by August 1 a it was forfeit. And be the employer acknowledged that it didn't start negotiating until August 12 and thereafter. So do we need to go any further than either It just wasn't preserved. It was forfeit or even on the merits reaching the question, the employer has acknowledged no no notice until August 12 done I absolutely agree with you. And I think that's how we try to present it in the brief. And the one thing I will add, though, that I don't think I've Touched on is that the so yes, we have the employer saying we paid retroactive January one. Part of the issue, though, is for purposes of compliance and the back pay award part of this is to ensure that in fact all the employees did receive it. And if you, for instance, left roles or left the employee between say August one and the January one retroactive you would still be entitled to that. I think it's to work out in back to work out in the compliance proceeding. So I think it's unfair to say there was no harm, no foul. I think it's up to the board first to make sure. Okay, there was no harm no foul in terms of the money. But let's make sure let's make sure the interest was paid if that's appropriate. And on top of that, all of this also ignores the very fact that the board, even under voluntary compliance cases. The board is still entitled to judicial enforcement of its decision. And at the very least, there should be the posting that if there is full compliance. Otherwise, the employer would still be obligated to post a notice to let the employees know we broke the law. And we won't do it again. So I think that that's getting lost in the shuffle here that there is still a component of the root of the remedy that is tied to this violation, even if there's no more money on the table for any of the employees. One more question. And that is on the affirmative bargaining order. My understanding is that it's just says that there can be no decertification process for a reasonable period of time, based on board case law, what is the general range for that reasonable period of time and how does an employer know when it's up. So your honor is correct. The order for the affirmative bargaining order says that it's in place for a reasonable period of time. And I don't know that the board has any sort of bright line. Date certain think it's all very fact specific, just like the bargaining order itself is very fact specific. It depends very much on the specific parties and the specific violations in the case. So it's going to be up to the board to determine if there is, for instance, another if the employees present a petition or the employer at the board. I'm sorry, the court enforces the judgment and the parties return to the bargaining table, it would be if Let's assume that anything could go wrong. Maybe things will go great. There won't be any more decertification will get a first contract. But if that's not the way things play out, then I'm sorry, I don't think I have a more specific answer on the time. Well, if imagine, imagine that The orders enforced and they go back and A year goes by and then a new petition shows up and it's got the words on every single page and it has the requisite number of signatures. How does the employer know if they can either withdraw at that point and say it's a year and a day. Or ask for an election. Can they do it or will the board then say you've committed a violation by asking a year and a day because we don't think that's a reasonable period of time, even though we never told you what the reasonable period of time is right work out So it definitely To determine whether this was reasonable and I would say the case law would I hate. I can't speak for the board runner knows that I can't sort of bind on the board would find in the future, but Given that a certification bar for a brand new union is only a year. I would say that the that the employer could look to those lines of cases to determine whether In this instance, if it continues to recognize the union and bargaining faith towards the first contract for the same amount of time that a general That generally is permissible under a certification versus the run of the mill certification that the employer could certainly look to that to determine whether it's actually more reasonable now. An unfair labor practice, say they do it at the 11th month. So I saw some cases that treated this reasonable period of time is six months. And that's why it was confusing to me. So say it's the 11th month so they can't rely on the one year the, you know, the, the original rule for a union. All I want to know is if they came with this and who knows if they would even get one. But if they had this perfectly package, you know, the model petition for decertification. At the 11th month and they go. Now I've got no choice. I have to withdraw. And let's assume there's no question about that evidence. Would it still be an unfair labor practice to do that because the board could later say that wasn't a reasonable period of time, or would the board just go. No, sorry. How would that work because the reasonable period of time is so vague for the employer. I know. And unfortunately, I don't think I can say that what no matter what happens any period of time is that the board wanted to give a specific period of time 11 months, six months, it would have done so. So even if, for instance, the employer as your honor. Paints comes forward with this picture perfect petition has signatures and intense on all the pages couldn't be clearer. There would still be a question about where was there any activity that happened. Were there any additional and for labor practices to the employer that engage in bad faith bargaining to the employer do other things that affected the relationship so that that petition is either tainted or If there could be lots of arguments by that. I'm just trying to ask you how the employer is supposed to navigate this. That's all I really want to know. I know. And I, the best thing we're advising an employer and let's assume this has been the ideal employer, so that you don't have any of those externalities and you've got the perfect petition and it's month 11 What would you or can employer, ask the board. What are they supposed to do, what would you tell the employer to do I know and I feel like I understand that I'm getting a very unsatisfactory answer. But I think the best that I can say Is that I would advise the employer. Listen, the board had before to finding from the administrative law judge of a state certain it said six months, the board changed that and said a reasonable period of time. So I think I would have to advise if they were my client, I'd have to advise the employer. Listen, we don't have a time certain the board has decided That the best thing here is to let the parties bargain for a reasonable period of time. We know that they didn't put a time on it. So I advise you to bargain in good faith. The best you can try to reach an agreement. And if that fails after a certain period of time. Let's talk about what happened. Let's talk about whether the passage of time has been reasonable. And then let's see whether it makes sense to act on a petition or to ask for an election. I get that I'm not being I can't give you a more satisfactory answer. I apologize. Okay, thanks. I appreciate the effort. All right. Thank you, Mr. Gilbert. Your Honor, I'm Nathan Kilbert on behalf of intervener United Steelworkers Union. If I might, I'd like to take a crack at and rather unorthodox role for me and giving advice to an ideal employer faced with a situation like the one your honor described. It's in my understanding, it's never an unfair labor practice for an employer to file an RM petition. So an employer faced with this situation would not withdraw recognition at its peril as this court has observed and flying food food group, but instead, go to the region. Is that true that if you have an order that says This surprises me. If you have an order that says No decertification efforts for a reasonable period of time, it would not be an unfair labor practice for This hypothetical company at month to To Look, I've never seen a case in which a mere filing of an RM petition is a ULP. I am not sure that the Order this. You haven't seen one where they've done one where they have when they're under a reasonable period of time obligation. That's why I was, I was surprised at your statement that would never be an unfair labor practice. I've never seen a case in which there is an unfair labor practice finding for filing an RM petition and doing nothing else. And I think that the order here does not say No. When are you telling me the Union would not considered an unfair labor practice if they did it and If they filed an RM petition. I'm not going to bind my client to some hypothetical situation, but I Would not advise my client that that would necessarily be a slam dunk ULP and the That's okay. So then you just don't. So your, your statement to me that it would never be an unfair labor practice is just not accurate. You're saying now I've never seen one and, you know, Your Honor, I apologize. But I, I think that the, the best advice to an ideal employer here would be to file an RM petition. If, and I do think that it's, it's worth clarifying that during an RM petition recognition continues. So the employer would not withdraw recognition during the pen and see an RM petition. And so they would not be in violation of the order here, which I think just requires them to continue to recognize and on request bargain with the Union, so they would still be in compliance with that. Um, the inviolate possible violation of an unfair labor practice from employees. We're not Trying to figure out It's, it's, I think that the board in Levitz and more recently in Johnson controls on has continued to say that it's not an 8A2 For unlawful support for a non majority union for an employer to seek RM a clarification election here when there is A petition that shows that there is not What might appear to be majority support for you. So the idea that they are compelled to withdraw recognition when faced with a petition, a perfect petition. I don't think is Necessarily accurate. You can always file for an RM And I see that I'm out of time. So if if your honors have no further questions. Yeah. All right. Judge pillared Okay. All right. Then, Mr. Grimaldi. Why don't you take two minutes. He's not unmuted. And can you do something. Judge, I have just sent Mr. Grimaldi a request to me. I'm sorry, I was unable to unmute Why finally I pressed all day. And here we are. I'll just address a couple of quick points. The previous discussion, in my opinion, is all the more reason why from a remedial standpoint, we need to slow this remedy here. The GC is unable to determine what's a reasonable time there's discussion back and forth about whether an RM petition or unilateral withdrawal after a quote reasonable time Is the right approach. And so I believe that that's all the more reason why a skirmish remedy is appropriate in this case and Over the past number of years, there's been turnover. It's time to give these employees a fair chance at this point to make a decision that's with regard to the remedy. Just one quick brief point about the the wage increase. Problem. I mean, the problem that with your scum. It's ready. One is you're, you're nothing. You're not similarly situated to the the The employer and the scum is case at all, where in fact, you know, the union, unbeknownst to the employer had sort of re obtained majority status. And so that for employer had no idea at all. And Before that, the union had been completely inactive for quite some time. So there's nothing like what's going on here. And so it's not a question of whether you're in your, you're not entitled on the terms of scum is on terms of scum is to Have a not have an affirmative bargaining order. The question was, you know, if you want to do election, you could have done that. When you got that first petition, assuming if you if you'd had some basis. Well, assuming if you If you'd have to figure out if you thought you had basis for 30% you'd have to probably have done some more inquiry. I'm not sure you could have even done that on that petition. So the question is, you know, if the employees want something they know how to do it. But I don't know why the employer gets rewarded for not having done what it should have done in the first place. Well, we don't, we don't, we don't look at it as rewarding the employer, but giving the employees a choice. And employees made a choice on a point here is that the that the company didn't respect that choice. Well, it did it just and it certainly did from the very beginning. And actually, even with regard to the wage increase. I want to make sure we're clear. This wasn't a situation where the union got certified the company stopped giving wage increases, they had given a wage increase the year before. After the union was certified. I just wanted to make sure we were clear on that, but they did respect the choice and then bargained and eventually as we've already discussed receive the petition, which was You hadn't started bargaining. Time of the that first the time of that first after post certification that first wage increase you hadn't started bargaining yet with the union. Correct. That's correct. What date was the union certified It would have been April, I believe, of either 2014 or 15 Okay. I believe 14 but that there were wage increases that were given after they were certified. So it wasn't a situation where they were But not after negotiation. Remind the union in any way, shape, or form. Right. But you hadn't started negotiating with the union. That's correct. That's correct. All right. Your case is submitted.
judges: Henderson, Millett, Pillard